# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00691-CV

**In the Mater of J.A.R.**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT**
**NO. J-25,009, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

After J.A.R. pleaded true to violating the terms and conditions of her probation by running away from home and testing positive for illegal drug use, the district court, sitting as a juvenile court, modified J.A.R.'s probation. *See* Tex. Fam. Code Ann. § 54.05(f) (West Supp. 2008). In a single point of error, J.A.R. asserts that the juvenile court abused its discretion by extending her probationary term and committing her to the CHOICES residential treatment program. We will affirm the order.

## BACKGROUND

On November 9, 2006, the State filed its original petition alleging delinquent conduct. In the petition, the State alleged that J.A.R. committed the offense of burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02 (West 2003). Following a hearing, the juvenile court found that J.A.R. had committed the offense and adjudicated her delinquent. The juvenile court placed J.A.R. on probation and in the custody of her aunt for one year. As a term and condition of probation,

J.A.R. was not allowed to use illegal drugs. Additionally, J.A.R. was required to be inside her aunt's residence each day between 8 p.m. and 7 a.m., unless accompanied by her parent or guardian.

On March 20, 2007, the State filed its motion to modify J.A.R.'s disposition. In the motion, the State alleged that, on December 20, 2006, J.A.R. violated the terms and conditions of her probation by testing positive for THC, an illegal drug, and running away from home. The record reflects that J.A.R. was away from home and out of contact with the probation department for approximately eight months, from December 2006 until October 2007.

On November 6, 2007, the juvenile court held a modification hearing. At the hearing, J.A.R. pleaded true to the State's allegations in the motion to modify. The juvenile court then proceeded to hear evidence. The State's sole witness was J.A.R.'s probation officer, Mary Chagolla. Chagolla testified that J.A.R. was apprehended when authorities were questioning her as a witness to an October 16, 2007 burglary (an offense which the State subsequently accused J.A.R. of committing). Upon running her name "through the system," authorities found a warrant for J.A.R. and brought her into custody. According to Chagolla, when J.A.R. was brought into custody, she again tested positive for THC, and also for Benzos.

Chagolla testified that when she asked J.A.R. where she had been for so long, J.A.R. told her that she had been "staying at different friends' houses," including her boyfriend's house, and "just bouncing around." When Chagolla asked J.A.R. why she ran away, J.A.R. told her that "she wasn't ready. She was immature. You know, it just was—it was easy for her to just do what she was doing at the time."

Chagolla testified that the probation department's primary recommendation for J.A.R. was the CHOICES residential program. When asked why the program was recommended, Chagolla explained, "Well, due to the history. [J.A.R.] has a history of running. She has some drug use. And she's been absconded for so long, we're not real sure what else is going on." Chagolla added that, through CHOICES, the department would be able to give J.A.R. the tools that would allow her to "stay drug free and remain at home."

When asked about the services CHOICES could provide for J.A.R., Chagolla testified:

> CHOICES will, of course, be a safe environment where she will not be able to run, first of all, and she will be safe. She will not be around any drugs. And they will also work with her in counseling. We'd be able to engage FPP [Family Preservation Program] for her and her family. There would just be numerous services that we would be able to provide for her and her family at the time to get her ready to transition back to home.

Chagolla also testified that when J.A.R. was first placed on probation, she was prescribed Celexa and Seroquel, medications for bipolar disorder. While J.A.R. was on the run, Chagolla was "pretty sure she wasn't taking" her medications.

Chagolla was also asked why allowing J.A.R. to return home was not "a good option." Chagolla testified that the probation department feared that if J.A.R. returned home, "when things get hard again" or if "something comes up that she cannot deal with," J.A.R. might run away again. Chagolla concluded,

> We don't feel that at this time, if she is released on probation at home with her aunt or her mother, if something were to arise that she cannot deal with, that she would stay home. And that would not allow us to provide her with the services that she needs.

Later in her testimony, Chagolla added,

> I just don't think neither her Aunt Suzie or her mother are ready to provide her with all the services that she's going to need, or be able to keep her at home. I'm not saying that they're bad. I'm just saying that if [J.A.R.] decides that this is too hard for her, she might run again. And I don't know if they'll be able to contain her at the house.

On cross-examination, Chagolla was asked if there was a waiting period for J.A.R. to be placed in CHOICES. Chagolla testified,

> No. Actually[,] during the staffing, they were—they have a bed ready for her, and they really want to work with her. They did mention that they feel that they have time to intervene with [J.A.R.] to be able to get her on the right track so when she does become an adult or complete their program, she would be successful.

Finally, Chagolla testified that the CHOICES program lasts four to six months, and that the plan was for J.A.R. to return home to her mother or aunt upon completion of the program.

The record reflects that the juvenile court also considered an extensive and detailed "Court Summary" report prepared by Chagolla. The report summarizes such pertinent information as J.A.R.'s placement history, mental health history, medical history, and "family dynamics." The report concludes with several recommendations for J.A.R., including "twelve months probation to start at CHOICES."

After the close of evidence, the juvenile court allowed J.A.R.'s aunt, mother, and stepfather to make statements. All three explained why they believed it was in J.A.R.'s best interest to return home rather than be placed in the CHOICES program.

4

At the conclusion of the hearing, the juvenile court extended J.A.R.'s probation until December 1, 2008, and placed her in the CHOICES program. This appeal followed.

## STANDARD OF REVIEW

Juvenile courts are granted broad powers and discretion in determining a suitable disposition for a juvenile who has been adjudicated to have engaged in conduct indicating a need for supervision, particularly in a proceeding to modify a disposition. *In re E.D.*, 127 S.W.3d 860, 862-63 (Tex. App.—Austin 2004, no pet.). Accordingly, we will not disturb the juvenile court's findings regarding the modification of a disposition absent a clear abuse of discretion. *Id*. at 863. The juvenile court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to guiding rules and principles. *Id*.

A trial court may modify its original or a prior disposition if it finds by a preponderance of the evidence that a child violated a reasonable and lawful order of the court. Tex. Fam. Code Ann. § 54.05(f). The trial court must give specific reasons for the disposition of or modification of the disposition of a juvenile. *Id*. §§ 54.04(I), .05(I). This requirement assures that the child will be advised of the reasons for the disposition and will be in a position to challenge those reasons on appeal. *E.D.*, 127 S.W.3d at 864. Such specificity also allows an appellate court to review the reasons for the disposition and determine whether they are (i) supported by the evidence and (ii) sufficient to justify the disposition ordered. *Id*. We may reverse for an abuse of discretion if the record does not support the findings. *Id*.

**ANALYSIS**

In her only point of error, J.A.R. asserts that the juvenile court abused its discretion by extending her probationary term and committing her to the CHOICES residential treatment program. She claims that this decision violated "one of the guiding rules in the juvenile court system" that, "whenever possible[,] rehabilitation of the juvenile should occur in the home environment." *See* Tex. Fam. Code Ann. § 51.01(5) (West 2002). The State responds that in-home probation had already been attempted, and it had not succeeded. According to the State, the evidence supports the juvenile court's findings that the CHOICES program was in the best interest of J.A.R. and society, while her continued placement at home was not.

In its order modifying probation, the juvenile court's findings included the following:

- J.A.R. violated two terms of her probation by running away from home and testing positive for illegal drugs.

- J.A.R. "remains in need of rehabilitation and for the protection of the public and [herself], a modification of the prior disposition must be made."

- J.A.R., in her home, "cannot be provided the quality of care and level of support and supervision that [J.A.R.] needs to meet the conditions of probation."

- "All reasonable efforts were made to prevent or eliminate the need for [J.A.R.]'s removal from home."

- "[The best interest of [J.A.R.] and of society will be served by placing [J.A.R.] on probation outside her home."

- "The best interest of [J.A.R.] and of society will be served by placing [J.A.R.] on probation at Choices."

6

The evidence in the record supports the juvenile court's findings. J.A.R. pleaded true to testing positive for illegal drugs and running away from home. These probation violations occurred while J.A.R. was at home, in the custody of her aunt. J.A.R.'s probation officer, Mary Chagolla, testified that J.A.R. told her that she had spent her time away from home "just bouncing around" from one friend's house to another. Again, this period of time was from December 2006 until October 2007, approximately eight months. Chagolla also testified that when J.A.R. was brought into custody—in connection with her being a "witness" to a burglary offense that the State later accused her of committing—she again tested positive for illegal drugs. Chagolla further testified that J.A.R. "has a history of running." This history was summarized in the extensive and detailed "Court Summary" that Chagolla prepared and the juvenile court considered. Also summarized in the report were the previous efforts by state officials to provide counseling and treatment to J.A.R. and her family.

None of the above evidence was disputed. The only dispute was the appropriate placement for J.A.R. Although J.A.R.'s aunt, mother, and stepfather all stated that they believed J.A.R. should return home rather than be placed in CHOICES, Chagolla testified about the reasons she believed CHOICES was the best option for J.A.R. Chagolla testified that CHOICES would provide J.A.R. "with a safe environment" where "she will not be able to run" and "she will not be around drugs." Furthermore, according to Chagolla, the staff at CHOICES already had a "bed ready for her, and they really want to work with her." Chagolla explained that the staff at CHOICES "feel that they have time to intervene with [J.A.R.] to be able to get her on the right track so when she does become an adult or complete their program, she would be successful."

7

On the other hand, Chagolla testified that home was not a good option for J.A.R. Chagolla feared that if J.A.R. "is released on probation at home with her aunt or her mother, [and] if something were to arise that she cannot deal with," she would run away. If that happened, Chagolla testified, the department would not be able "to provide her with the services that she needs." Chagolla added, "I just don't think neither her Aunt Suzie or her mother are ready to provide her with all the services that she's going to need, or be able to keep her at home. . . . I'm just saying that if [J.A.R.] decides that this is too hard for her, she might run again. And I don't know if they'll be able to contain her at the house." Chagolla was also concerned about her belief that J.A.R. did not take her prescription medicine during the time she ran away from home. Based on J.A.R.'s undisputed history of running away from home, the juvenile court would not have abused its discretion in finding that Chagolla's concerns were justified. We conclude that the above evidence supports the juvenile court's findings that J.A.R.'s placement in CHOICES was in the best interest of J.A.R. and society, while her continued placement at home was not.

We similarly conclude that the evidence supports the juvenile court's decision to extend J.A.R.'s probationary term by one year. The report prepared by Chagolla recommended a twelve-month probationary term. Additionally, it was undisputed that J.A.R. had been away from home and out of contact with the probation department for approximately eight months of her original, one-year term of probation. It was also undisputed that successful completion of the CHOICES program would take between four to six months. The additional year of probation would allow J.A.R. time to complete the program and return home, and provide the probation department with additional time to evaluate J.A.R.'s progress after she completed the program.

On this record, we cannot conclude that the juvenile court abused its discretion in modifying J.A.R.'s probation. *See E.D.*, 127 S.W.3d at 863-66. We overrule J.A.R.'s sole point of error.

## CONCLUSION

We affirm the order of the juvenile court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed:   August 21, 2008

9